## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RAPHAEL S. TRICE,                              *

Plaintiff,                                     *

v.                                             *            Civil Action No. CCB-19-810

THOMAS WOLFE, *Warden*,                        *

Defendant.                                     *
                                            ***

### MEMORANDUM OPINION

Self-represented plaintiff Raphael S. Trice, currently incarcerated at Dorsey Run Correctional Facility in Jessup, Maryland, brought this civil action pursuant to 42 U.S.C. § 1983 against the Warden at Brockbridge Correctional Facility ("Brockbridge") in Jessup, Maryland, where he was previously housed. ECF No. 1. In his unverified Complaint, Trice asserts a violation of his constitutional rights arising from the conditions to which he was subjected at Brockbridge. *Id.* He seeks declaratory and injunctive relief, as well as monetary damages totaling $975,750. *Id.* at 4–5.

On September 20, 2019, defendant Warden Thomas Wolfe (the "Warden") filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 16), which Trice opposed (ECF No. 18). On September 30, 2019, Trice filed a Motion to Appoint Counsel, (ECF No. 19), and on October 4, 2019, he filed a Motion for Appointment of Inspector to Enter, Inspect and Take Photos of the Prison (ECF No. 20). A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons explained below, the court will grant the Warden's motion, construing it as one for summary judgment. Trice's motions will be denied.

### Background

Trice claims that he arrived at Brockbridge on January 17, 2018, at which time he was

assigned to Kent dorm, Bunk 10.  Complaint, ECF No. 1 at 2.  Later that day, he observed mice crawling on the heaters above his head, and the following day he saw mold and mildew on the shower walls and ceilings.  *Id.* at 2–3.  According to Trice, broken housing dorm windows allow freezing air to come in, the dorm does not have heat, and prison staff refuse to issue extra blankets. *Id.* at 3.  Trice also claims that Brockbridge does not have any fire alarms, fire extinguishers, or sprinklers onsite, and that he has been exposed to asbestos as a result of pipe insulation being torn. *Id.*

Trice states that on February 26, 2018, after he complained to the governor and prison administrators, he met with Brockbridge Facility Administrator Charles Mitchell to discuss his concerns.  *Id.*  Trice claims that Mitchell acknowledged his complaints, said that he "cannot argue against the issues being raised," and explained that they were in the process of renovating Brockbridge's bathroom and showers.  *Id.*  On February 27, 2018, Trice received a letter from Rose Thompson, Management Associate at the Maryland Department of Public Safety and Correctional Services ("DPSCS") reiterating that the prison was in the process of repairing the bathroom and showers.  *Id.*; ECF No. 1-1 at 1.  Trice subsequently filed grievances regarding the conditions, which he says were all dismissed for procedural reasons.  ECF No. 1 at 3–4; ECF No. 1-1 at 2–14.  He filed the instant action on March 15, 2019, alleging that the "hazardous conditions" have affected his "health and safety."  ECF No. 1 at 3–4.  He seeks a declaration that his Eighth Amendment rights have been violated, injunctive relief in the form of Brockbridge's renovation, and monetary relief.  *Id.* at 4–5.

Jon Scramlin, Correctional Case Management Manager and Litigation Coordinator for the Maryland Correctional Pre-Release System, states that Brockbridge is an "aging facility that demands constant maintenance and repair."  Decl. of Scramlin at ¶ 3, ECF No. 16-7.  According

to Scramlin, problems that occurred during the time that Trice was housed at Brockbridge were addressed, either by maintenance staff or by outside contractors. *Id.* Although broken windows were discovered throughout the year, they were usually repaired within a day or two. *Id.*

By February 2018, routine pest control was in place, and the facility had a plan to renovate all dorm bathrooms to eliminate any mold and mildew in the showers. *Id.*; *see also* Weekly Institutional Summaries, ECF No. 16-8. The bathroom renovation project, however, did not begin until December 2018, after a long contract bidding process. ECF No. 16-7 at ¶ 3. In 2018, repairs were also made on the boilers and the heating, ventilation, and air conditioning system. *Id.* at ¶ 5; *see* ECF No. 16-8; Capitol Boiler Works Invoice, ECF No. 16-9. Throughout that time, asbestos was only found in damaged floor tiles that were removed during the prison auditorium renovation project. ECF No. 16-7 at ¶ 5.

Scramlin acknowledges that Brockbridge experienced problems with fire alarms, fire extinguishers, and the fire sprinkler system, but they have since been repaired. ECF No. 16-7 at ¶ 4. Fire extinguishers are not kept in the dorms but are located in the corridor just outside of the entrances so that they can be monitored for safekeeping by correctional staff. *Id.* Due to the age of Brockbridge, sprinkler systems are found only in the kitchen and warehouse, both of which have undergone modifications and renovations that required the installation of a sprinkler system. *Id.*

According to Carlos Gonzalez, the Environmental Compliance Safety Officer for the Maryland Correctional Pre-Release System, Maryland state law requires sleeping areas to have an automatic smoke alarm system. Decl. of Gonzalez at ¶ 4, ECF No. 16-10. He further states that Brockbridge satisfies and meets the National Fire Alarm Code and the National Fire Protection Association standard. *Id.* Egress points are free and clear of obstructions, and Brockbridge has an annual fire drill schedule, as quarterly fire drills are required pursuant to the Maryland Commission

on Correctional Standards ("MCCS").  *Id.*  MCCS has audited Brockbridge several times and has conducted annual "Health and Wellness" inspections.  *Id.* at ¶ 3.  Gonzalez states that none of the audits or inspections have found neglect by staff, officers, or the inmate population regarding working or living conditions.  *Id.*

Trice was incarcerated at Brockbridge from January 11, 2018, to December 10, 2018.  *See* Inmate Traffic History, ECF No. 16-4 (showing transfer to Baltimore City Correctional Center). On September 22, 2018, he requested an appointment to be tested for lead, asbestos, and mold exposure, and was seen by Muleta T. Obsu, M.D. on October 12, 2018, at which time he was scheduled for a chest x-ray.  Medical Records, ECF No. 16-13 at 10.  The x-ray, which was performed on October 18, 2018, revealed clear lung fields and no acute cardiopulmonary disease. *Id.* at 59.  That same day, Trice filed a sick call to request his x-ray results, but he failed to attend the follow-up appointment on November 7, 2018.  *Id.* at 9, 64.  His only other sick call requests at Brockbridge included complaints for vomiting and diarrhea, right toe nail fungus, a blister on his left toe, rashes on his hand and genital area, chest pain due to a cold, and lactose intolerance.  *Id.* at 11–17.  He was seen and treated for all of these complaints.  *See generally* ECF No. 16-13.

## Standards of Review

The Warden's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).  However, a court, in its discretion, may consider matters outside of the pleadings,

pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  But, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (citation omitted).

Because the defendant filed a motion titled "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment" along with documents in support and Trice filed a response with his own exhibit attached, Trice was on notice that the court could treat defendant's motion as one for summary judgment and rule on that basis.  Accordingly, the court will review Trice's claim under the Rule 56(a) standard.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphases added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (further citation omitted). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The court must view the evidence in the light most favorable to the

nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (citations omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## Analysis

### I.     Motion for Summary Judgment

The Warden argues that the Complaint must be dismissed, or in the alternative, summary judgment should be granted in his favor because: (1) Trice fails to state a valid conditions claim under 42 U.S.C. § 1983; (2) Trice fails to state a due process claim based on violations of state policies, procedures, rules, and regulations; (3) there is no respondeat superior liability under § 1983; (4) Trice failed to exhaust administrative remedies; and (5) the Warden is entitled to qualified immunity.  ECF No. 16-1.

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const., amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976) (citations omitted).  Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  To the extent Trice complains about his experiences while he was housed in Brockbridge, he raises conditions claims.

"In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (brackets and emphases in original) (citations

and quotation marks omitted).   "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'"   *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citation omitted).   "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."   *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citation omitted).   "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."   *Strickler v. Waters*, 989 F.2d 1375, 1380–81 (4th Cir. 1993).

Here, Trice claims that there were mice, mold, mildew, and broken windows at Brockbridge.   In addition, he alleges that his housing unit did not have heat, prison staff refused to issue extra blankets, there were no fire alarms, fire extinguishers, or sprinklers onsite, and that he was exposed to asbestos at the prison.   Even if Trice satisfies the objective prong—that he was deprived of a basic human need and the deprivation was sufficiently serious—he fails to show that, subjectively, Brockbridge officials acted with a sufficiently culpable state of mind in imposing such conditions as punishment.

From the declarations under oath and numerous exhibits filed by the Warden, it is evident that although Brockbridge is an aging facility requiring constant repair, its administrators and maintenance staff were aware of the problems and continuously made efforts to address them. Despite Trice's bald allegation that defendant failed to take "'any' corrective action to fix the problems," he acknowledges that he was informed of DPSCS's plans for repair and that "[t]he agency [was] in the process of working on . . . the bathroom and shower renovations."   Response, ECF No. 18 at 3.   From the record, it appears that those renovations commenced following Trice's

transfer from Brockbridge to another facility.

Moreover, Trice cannot withstand summary judgment because he has failed to produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. From his medical record, it does not appear that he suffered any injury related to the basis for his conditions claims. Although he asked to be tested for lead, asbestos, and mold exposure, the subsequent x-ray revealed clear lung fields and no acute cardiopulmonary disease.

It does not appear that Trice alleges a Fourteenth Amendment due process claim. But to the extent he intended to make such a claim based on the alleged violations of state policies, procedures, rules and regulations, it has not been sufficiently pled. Further, "it is well settled that violations of state law cannot provide the basis for a due process claim," *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 392 (4th Cir. 1990), and the record shows that officials at Brockbridge took remedial action, including conducting major renovations, to improve the conditions at Brockbridge.

For the foregoing reasons, the Warden is entitled to summary judgment.[1]

## II.   Trice's Motions

After receiving the Warden's dispositive motion, Trice filed a Motion to Appoint Counsel and a Motion for Appointment of Inspector to Enter, Inspect and Take Photos of the Prison. ECF Nos. 19, 20.

With regard to his request for counsel, the court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint an attorney to represent any person proceeding in forma pauperis who is "unable to afford counsel." In civil actions, however, the court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the court considers "the type and

---

[1] In light of this ruling, the court need not address defendant's remaining arguments.

complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (internal citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008) (citation omitted). Inherent in this analysis is that one's indigence alone is insufficient to establish exceptional circumstances.

Trice does not proffer any other reasons demonstrating exceptional circumstances or a particular need that would require the immediate assistance of an attorney. He has adequately presented his claim, and his case need not proceed to discovery or a hearing. For these reasons, appointment of counsel is not warranted.

Trice also moves, pursuant to Fed. R. Civ. P. 34(a), for the appointment of an inspector to enter and take photos of Brockbridge. ECF No. 20. As no scheduling order was entered and there has been no order issued by the court with respect to discovery, the Warden is not obliged to engage in discovery in this case. *See* Local Rule 104.4 (D. Md. 2018). In any event, as summary judgment is being granted in favor of the Warden, denial of Trice's Motion for Appointment of Inspector is warranted.

## Conclusion

For the reasons explained above, the Warden's motion, construed as one for summary judgment, will be granted. Trice's motions will be denied. A separate Order follows.

___6th___
Date

___/S/___
Catherine C. Blake
United States District Judge